# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| CORIE ALICIA HARING, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-18-784-SM |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Corie Alicia Haring (Plaintiff) brings this action for judicial review of the Defendant Commissioner of Social Security's final decision she was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented under 28 U.S.C. § 636(c) to proceed before a United States Magistrate Judge. Docs. 13, 17.[1] Following a careful review of the parties' briefs, the administrative record (AR), and the relevant authority, the court affirms the Commissioner's decision.

---

[1] Citations to the parties' pleadings and attached exhibits refer to the court's CM/ECF pagination. Citations to the Administrative Record refer to the original pagination.

I.   **Administrative determination.**

   A.   **Disability standard.**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just h[er] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

   B.   **Burden of proof.**

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [she] can no longer engage in [her] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

## C. Relevant findings.

### 1. Administrative Law Judge's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 12-24; *see* 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1) had not engaged in substantial gainful activity since her alleged onset date of January 14, 2014;

(2) had the severe impairments of hypertension, lower back pain, unspecified trauma/stressor related disorder, r/o mild neurocognitive disorder, and depression;

(3) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4) had the residual functional capacity[2] for light work with various additional restrictions;

(5) could not perform any past relevant work, but could perform jobs that exist in significant numbers in the national economy, such as data entry clerk, bakery worker, and production assembler; and thus

(6) was not disabled.

AR 14-24.

---

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

3

### 2. Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, so the ALJ's unfavorable decision is the Commissioner's final decision here. *Id.* at 1-5; *see Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance" and means "only" "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lax*, 489 F.3d at 1084; *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citation omitted). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citation omitted). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (citation omitted).

B.  **Issues for judicial review.**

Plaintiff asserts that the ALJ "committed reversible legal error" in her step-five determination that Plaintiff could perform work, and in her discussion of the medical evidence of record. Doc. 18, at 7-13. The court disagrees with both assertions.

III. **Analysis.**

A.  **Step-five determinations.**

As noted by the ALJ, Plaintiff was 55 years old on the alleged disability onset date. AR 23. Under SSA regulations, a person aged 55 or older is considered a person of advanced age. 20 C.F.R. § 404.1563(e).[3] During the hearing, the vocational expert testified that Plaintiff had both skilled and semi-skilled past relevant work. AR 23, 63-64. The VE testified, and the ALJ found, that Plaintiff could not perform her past relevant work, but had transferable skills from that work. *Id.* at 23, 64.

Relying on VE testimony, the ALJ also found that Plaintiff was capable of performing such representative occupations as data entry clerk, performed at the sedentary, semi-skilled level; bakery worker, performed at the light, unskilled level; and production assembler, performed at the light, unskilled

---

[3]    Plaintiff was 59 years old on the date of the decision, but still more than nine months from turning 60, at which point she would be considered a person closely approaching retirement age. *See* AR 23-24; 20 C.F.R. §§ 404.1563(d), .1568(d)(4).

level. *Id.* at 24; *see also id.* at 64-66. Plaintiff contends that the ALJ erred in relying on those occupations. Doc. 18, at 7-11.

### 1. Bakery worker and production assembler.

Plaintiff presents the conclusory argument that the ALJ erred in relying on the occupations of bakery worker and production assembler because those occupations were light and unskilled. *Id.* at 7-9. Plaintiff argues that the "unskilled" occupations did "not involve[e] transferable skills" and so "could not be relied upon to justify denying [Plaintiff] benefits at step five under 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.06." *Id.* at 9; *see also id.* at 8.

The Commissioner's Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2, often called the "grids," "offer a short-cut method for resolving disability questions whenever the claimant can perform a substantial majority of the work in the designated RFC category." *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995). "Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(a).

Plaintiff supports her argument with citation to Rule 202.06 of the grids, applicable when a claimant's RFC is for light work. *See id.* Rule 202.06. Under the Rule, a claimant is presumptively disabled if the claimant is of "advanced

age," is a "high school graduate or more—does not provide for direct entry into skilled work," and has "skilled or semiskilled—skills not transferable" work experience. *Id*. Stated differently:

> [F]or individuals of *advanced age* who can no longer perform vocationally relevant past work and who have a history of unskilled work experience, or *who have only skills that are <u>not</u> readily transferable* to a significant range of semi-skilled or skilled work that is within the individual's functional capacity, or who have no work experience, the limitations in vocational adaptability represented by *functional restriction to light work* warrant a finding of *disabled*.

*Id*. § 202.00(c) (emphasis added); *see also Hartman v. Berryhill*, 17-CV-01987-CMA, 2018 WL 3729509, at *8-9 (D. Colo. Aug. 6, 2018).

Plaintiff appears to be arguing that Rule 202.06 directs a conclusion of disabled because the ALJ found that Plaintiff could perform the unskilled jobs of bakery worker and production assembler. *See* Doc. 18, at 8, 9. This argument hinges on a misunderstanding of the Rule and its use. Application of the Rule is triggered by, among other things, whether claimant has transferable skills—not by whether the jobs considered by the ALJ are skilled or unskilled.[4]

---

[4] Indeed, when the grids are properly applied, the ALJ need not make findings about representative available occupations. *Evans*, 55 F.3d at 532-33; *cf. Trimiar v. Sullivan*, 966 F.2d 1326, 1332 & n.21 (10th Cir. 1992) ("Technically, the grids presume an occupational base which reflects the number of jobs in the national economy for each grid. If a claimant fits within a 'not disabled' grid category, the Secretary presumes that sufficient jobs exist in the national economy that the claimant can perform.").

Under Rule 202.06, if a claimant lacks skills readily transferable to a significant range of semi-skilled or skilled work within the individual's functional capacity, then the Rule would direct a conclusion of disabled. Here, the ALJ found that Plaintiff did have readily transferable skills, thus Rule 202.06 does not apply.[5] So Rule 202.06 does not preclude the ALJ's reliance on "light jobs of an unskilled nature" at step five. *See* Doc. 18, at 8. Plaintiff's first argument lacks merit and the court finds no reversible error in the ALJ's reliance on the occupations of bakery worker and production assembler.

### 2. Data entry clerk.

Plaintiff next argues that the ALJ did not make the findings required to determine that Plaintiff had skills that would transfer to the position of data entry clerk. *Id.* at 8-10. When determining the transferability of skills, the SSA mandates that the ALJ make "certain findings of fact and include them in the written decision." SSR 82-41, 1982 WL 31389, at *7. The only specific findings that SSR 82-41 indicates the ALJ must identify are the transferable skills and the specific occupations to which they are transferable. *Id.* That said, the court recognizes that the SSA emphasizes the effect of advancing age

---

[5] If Plaintiff is arguing that the ALJ should have applied the grids, here Rule 202.07 would apply, which would direct a finding of not disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.07 (directing a finding of not disabled when claimant is of "advanced age," is a "high school graduate or more—does not provide for direct entry into skilled work," and has "skilled or semiskilled— skills transferable" work experience).

8

on an individual's ability to make a successful vocational adjustment to other work. *See id.* at *5; 20 C.F.R. § 404.1568; 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(f). And the emphasis that the SSA places on age and vocational adjustment suggests that the ALJ should acknowledge the applicability of a heightened standard for individuals closely approaching retirement age. SSA regulations set forth that

> when a claimant is of "advanced age" and limited to sedentary work, then a finding of transferable skills may only be found where the sedentary work relied upon is so similar to the claimant's past work that the claimant "would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry."

20 C.F.R. § 404.1568(d)(4).

Recognizing this heightened standard, the court finds that the ALJ met SSR 82-41's requirements. AR 23-24. In her decision, the ALJ found that Plaintiff had acquired the skills of "use of computer and office equipment, keyboarding, interviewing, knowledge of laws related to child support, legal writing, job development, job placement, record keeping, event planning, bookkeeping, merchandising, sales, marketing, customer services, money handling, and training." *Id.* at 23. The ALJ also determined that Plaintiff had "acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy"

9

including the representative occupation of data entry clerk. *Id.* at 23-24.[6] And the ALJ noted that she confirmed with the VE that this position required no additional skills. *Id.* at 24; *id.* at 63-65.

As support for these findings, the ALJ relied on testimony by the VE. *Id.* at 23-24. The record reflects that the ALJ testified that Plaintiff had the above-listed "transferrable work skills." *Id.* at 63-64. When asked if those skills "transfer with very little or no vocational adjustment at age 55 to sedentary work," the VE answered affirmatively. *Id.* at 64. And when presented with hypotheticals assuming a person with the same age, education, and past relevant work as Plaintiff, but various additional limitations, the VE testified that data entry clerk was an occupation "utilizing transferrable skills that meets [the] hypothetical." *Id.*; *accord id.* at 66, 67.

Though Plaintiff argues to the contrary, neither is this a situation when the ALJ failed to make required specific findings, nor where the VE failed to identify which skills were transferable to which positions, nor where the ALJ's findings were otherwise unsupported by the VE's testimony. *See* Doc. 18, at

---

[6] SSR 82-41, regarding the transferability of skills, the SSA explains that "where job skills have universal applicability across industry lines, e.g., clerical, professional, administrative, or managerial types of jobs, transferability of skills to industries differing from past work experience can usually be accomplished with very little, if any, vocational adjustment where jobs with similar skills can be identified as being within an individual's RFC." SSR 82-41, 1982 WL 31389, at *6.

10

10; *compare* AR 23-24, 64, 66-67, *with Nielson v. Sullivan,* 992 F.2d 1118, 1121-22 (10th Cir. 1993) (reversing where claimant was of advanced age, but the ALJ "clearly failed" to ask the VE "whether or not the skill is transferable with little or no vocational training or job orientation" and "failed to make findings specifically targeted at the level of vocational adjustment needed for [claimant] to enter potential dispatching positions," concluding that "[b]ecause the ALJ failed to apply the correct legal principles, his finding of no disability is not supported by substantial evidence"); *Webster v. Barnhart*, 187 F. App'x 857, 859 (10th Cir. 2006), 187 F. App'x at 861-62 (reversing where the ALJ "never raised with the [VE] the significance of [the claimant's] advanced age and the resulting vocational adjustment issue," made no finding about the vocational adjustment required for the specific jobs he relied on, and the VE's testimony did not support any findings about vocational adjustment as it was "both minimal and circular"); *and Paris v. Colvin*, No. CIV-16-363-SM, 2016 WL 7438438, at *4-6 (W.D. Okla. Dec. 21, 2016) (remanding where "[n]either the record nor the ALJ's decision reflect that [s]he appropriately placed th[e] more stringent burden on the Commissioner at step five") (citation omitted).

Here, the ALJ's questioning and findings sufficed to meet the Commissioner's more stringent burden of establishing that Plaintiff had skills that could transfer with minimal vocational adjustment to other jobs Plaintiff can perform and that exist in significant numbers. *See Jensen v. Barnhart*,

11

436 F.3d 1163, 1168 (10th Cir. 2005) (affirming the Commissioner's decision in part because "the ALJ carefully led the VE through the regulatory requirements for transferability of skills for a person of advanced age"); *accord Ellis v. Colvin*, CIV-13-0091-F, 2014 WL 200808, at *3 (W.D. Okla. Jan. 17, 2014) (affirming where the ALJ discussed with the VE plaintiff's past work, which specific skills were transferable, whether such skills were transferable for a person of advanced age with very little vocational adjustment, and then relied on the VE's testimony to find plaintiff not disabled, and concluding "the undersigned finds that the ALJ did not ignore Plaintiff's advanced age in finding that she could successfully transition to other occupations, nor did he fail to explain his finding"); *see also* 20 C.F.R. § 404.1566(e) (noting that the ALJ can rely on VE testimony to determine "whether your work skills can be used in other work and the specific occupations in which they can be used").

The court finds no reversible error in the ALJ's reliance on data entry clerk as a representative occupation Plaintiff could perform using transferrable skills.

### B. Medical evidence.

Plaintiff asserts that the ALJ erred by failing to discuss "significantly probative" medical evidence relevant to Plaintiff's claims of debilitating lower back pain. Doc. 18, at 11-13. Medical evidence of record from nurse practitioner Jennifer Lucas reflects that Plaintiff began seeking treatment for

back pain in November 2015. AR 675-78. Medical records show that Plaintiff continued seeing Ms. Lucas for various ailments through November 2016, though records dated May 13, 2016 are the last ones to include complaint of low back pain. *Id.* at 656-85, 698-703, 724-31.

Plaintiff contends that the ALJ erred in failing to mention that Ms. Lucas' physical examinations found positive straight leg raise tests. Doc. 18, at 12. Plaintiff cites the following medical records: AR 677 (Nov. 19, 2015), 674 (Dec. 8, 2015), 671 (Jan. 26, 2016), 664 (Apr. 14, 2016), and 658 (May 13, 2016). It is true that each of those medical records show a positive straight leg test, but those records also reflect a lack of severe symptoms:

- *id.* at 677 (Nov. 19, 2015), normal palpitation of the spine, muscular strength 5/5 of the hips and legs, and full range of active and passive range of motion;
- *id.* at 674 (Dec. 8, 2015), normal palpitation of the spine, muscular strength 5/5 of the hips and legs, and full range of active and passive range of motion; additionally, Plaintiff reported that "[s]he is feeling a bit better after the steroids and would like to see how things go with PT before spine specialist referral";
- *id.* at 671 (Jan. 26, 2016) normal palpitation of the spine, muscular strength 5/5 of the hips and legs, and full range of active and

13

- passive range of motion; additionally, Plaintiff reported that "[p]ain is much improved with PT [physical therapy] and [A]leve";

- *id.* at 664 (Apr. 14, 2016) normal palpitation of the spine, muscular strength 5/5 of the hips and legs, and full range of active and passive range of motion; additionally, Plaintiff reported "relief of symptoms and no adverse effects from medications";[7] and

- *id.* at 658 (May 13, 2016) normal palpitation of the spine, muscular strength 5/5 of the hips and legs, and full range of active and passive range of motion; additionally, Plaintiff reported that her symptoms were "stable since last visit" and "notes some pain relief with [m]edications."

Though the ALJ did not discuss the positive straight leg tests, "an ALJ is not required to discuss every piece of evidence." *See Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (internal quotation marks omitted). And such tests were neither "uncontroverted evidence" that the ALJ chose not to rely on nor "significantly probative evidence" that he rejected. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Thus, the ALJ did not err in omitting them from her discussion of Plaintiff's allegations of low back pain and the

---

[7] Plaintiff contends that the ALJ erroneously ignored Plaintiff's complaints of pain at her April 14, 2016, appointment with Ms. Lucas. Doc. 18, at 12 (citing AR 662). At this appointment, however, Plaintiff also conveyed that medication relieved her pain. *See* AR 664.

omission does not undermine the substantial evidence supporting the RFC determination.

Plaintiff next argues that the ALJ erred in failing to discuss the results of an MRI conducted on November 25, 2015, and the initial assessment done by Plaintiff's physical therapist on December 10, 2015. Doc. 18, at 12 (citing AR 602-03, 650-52). These medical records affirm that Plaintiff began complaining of and sought treatment for low back pain in November of 2015. *See* AR 675-78 (Plaintiff's initial complaint of low back pain to Ms. Lucas, who referred Plaintiff for an MRI and physical therapy). They do not, however, contradict or undermine the ALJ's conclusion that "despite [Plaintiff's] allegations of severity [of physical complaints], overall her complaints have been generally correctible with medications and conservative measures." *Id.* at 20.

In support of this finding, the ALJ cited longitudinal treatment records showing sustained muscle strength and recognized that Plaintiff's decrease in symptoms "has proven sustained, as in 2016, providers have continued to find her with a normal gait, normal range of motion, and normal neurological functioning throughout." *Id.* (citing *id.* at 658, 675-77, 726). The ALJ also recognized that Plaintiff herself testified that Aleve and a TENS unit were "generally effective" for pain relief. *Id.* at 19; *see also id.* at 58. The ALJ further discussed that Plaintiff's "treatment efforts" did not support the "persistency

15

with which she reports her limitations," and specifying that "[f]or example, while [Plaintiff] testified that she is extremely limited in terms of standing and performing tasks, providers only after months of treatment found her physical presentation normal." *Id*. at 21. The ALJ continued that "further eroding her allegations on regard to pain, noticeably, [Plaintiff] in 2016, managed to paint for others at a level very close to the substantial gainful amount. Notwithstanding, objective testing performed on [Plaintiff] continually has shown nothing particularly limiting in [Plaintiff's] ability to perform tasks." *Id*. (citing *id*. at 656-85). The ALJ also noted that Plaintiff's providers had "recommended nothing more than pain medications for her pain," stating that "[Plaintiff's] ability to sustain at tasks using nothing more than over the counter medications and a TENS unit severely erodes her allegations in regards [sic] to the persistency of her pain, as these methods are extremely conservative in nature." *Id*. at 22.

Again, "[t]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton*, 79 F.3d at 1009-10. The ALJ must discuss the evidence supporting her decision, the uncontroverted evidence she chooses not to rely on, and the "significantly probative evidence" that she rejects. *Id*. at 1010. Here, the ALJ considered Plaintiff's allegations of pain, the results of physical examinations conducted during treatment, the frequency of treatment sought, the

16

effectiveness of conservative measures, and Plaintiff's activities after receiving treatment. Though the ALJ did not discuss the physical therapist's initial assessment or the MRI results, both records date from within a month of Plaintiff's initial complaints of low back pain and when she first sought treatment and do not contradict the ALJ's determination that, once Plaintiff began receiving treatment for her low back pain, her symptoms "have been generally correctible with medications and conservative measures." *See* AR 20.

Substantial evidence supports the ALJ's RFC determination and the ALJ's omission of discussion of certain portions of the medical record does not warrant reversal.

## IV. Conclusion.

The court AFFIRMS the Commissioner's decision.

ENTERED this 1st day of August, 2019.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE